USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/30/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TRUSTEES OF THE MASON TENDERS
DISTRICT COUNCIL WELFARE FUND,
PENSION FUND, ANNUITY FUND,
TRAINING PROGRAM FUND, JOHN J.
VIRGA, in his fiduciary capacity as Director, and
ROBERT BONANZA, as Business Manager of the
MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK,

                              Petitioners,

                -against-

ALL CLEAN ENVIRONMENTAL, LLC,

                              Respondent.
-------------------------------------------------------------------X

1:20-cv-00624-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

       The Trustees of the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Program Fund (collectively the "Funds") and Robert Bonanza, as Business Manager of the Mason Tenders District Council of Greater New York (the "Union" and, with the Funds, the "Petitioners"), seek to confirm an arbitration award obtained against All Clean Environmental, LLC ("ACE" or "Respondent") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  For the reasons that follow, the Court confirms the award.

       I.       BACKGROUND

       On December 8, 2009, ACE executed a collective bargaining agreement with the Union (the "2007 Agreement").  Petitioner's Rule 56.1 Statement ("56.1 Stmt."), Dkt No. 12, ¶ 5; Declaration of Haluk Savci ("Savci Decl."), Dkt No. 11, ¶ 7; Savci Decl. Ex. 2 at 24.  Under the 2007 Agreement, ACE is required to pay hourly benefit contributions to the Funds at specified rates for all qualifying employees.  2007 Agreement art. VIII.  The 2007 Agreement also binds ACE to the written terms

and conditions of the Funds' Trust Agreements ("Trust Agreement"). *Id.* § 13(h).[1] Both the 2007 Agreement and the Trust Agreement require ACE to furnish its books and payroll records when requested by the Funds for auditing purposes to ensure that ACE has complied with its benefit contribution obligations. 2007 Agreement art. VIII § 13(a); Trust Agreement art. IX § 8. This case arises from ACE's failure to remit contributions to the Funds for the periods of May 1, 2017 through June 1, 2018 and July 1, 2018 through September 30, 2018, as the 2007 Agreement requires. 56.1 Stmt. ¶ 6; Savci Decl. ¶ 8.

The Trust Agreement includes an arbitration provision, binding both parties in the event that dispute resolution is necessary. The Trust Agreement provides that "in the event that an Employer fails to make required contributions to the Trust Fund, . . . the Board may . . . initiate arbitration proceedings against a delinquent Employer." Trust Agreement art. IX, § 8. The 2007 Agreement requires that "[i]n the event that formal proceedings are instituted by the Trustees before a[n] arbitrator to collect delinquent contributions to such Fund or interest, and if such []arbitrator renders a judgment/award in favor of such Fund, the Employer shall pay to such Fund, in accordance with the judgment/award." 2007 Agreement art. VIII § 13(f). The 2007 Agreement further instructs that where an Employer "failed to remit dues owed to the Union," the award shall include "the full cost of the arbitrator's fees[.]" 2007 Agreement art. XII, sec. f.

Although the 2007 Agreement was set to expire in 2012, the 2007 Agreement contains an evergreen provision. The evergreen provision provides that the contract

> shall renew from year to year thereafter unless either party hereto shall give written notice for the other of its desire to modify, amend, or terminate this Agreement on its expiration date. Such notice must be given in writing by certified mail, postage prepaid, sixty days, but not more than ninety days, before the expiration date of this Agreement.

---

[1] See 2007 Agreement art. VIII § 13(h) ("The Employer agrees to and shall be bound by all terms and conditions of the Trust Agreements creating the Fringe Benefit Funds and by any rules, regulations, By-Laws or plan documents adopted by the Trustee of the Funds, as they may be amended from time to time, to regulate such Funds, including, but not limited to the Trust Funds' arbitration procedures for allegedly delinquent contributions and/or inability to conduct an audit.")

2

2007 Agreement art. XVI § 1.  Neither ACE nor the Petitioners sent such a notification to the other.  *See* Savci Decl. Ex. 5; Petition to Confirm Arbitration Award ("Petition"), Dkt. No. 1 ¶ 6.  Thus, during the time period at issue here—May 1, 2017 to September 30, 2018—ACE was bound by the 2007 Agreement.  56.1 Stmt. ¶ 5; Savci Decl. ¶ 7.

Pursuant to the 2007 Agreement, the Funds audited ACE's payroll records and determined that ACE had failed to comply with its contribution requirements for the period of May 1, 2017 through June 1, 2018.  56.1 Stmt. ¶ 18; Savci Decl. ¶ 8; Savci Decl. Ex. 7 ("Payroll Records").  Additionally, a shop steward report found that ACE had failed to comply with its contribution requirements for the period of July 1, 2018 through September 30, 2018.  56.1 Stmt. ¶ 18; Savci Decl. ¶ 8.  The Funds calculated that ACE owed a total of $64,655.75 in unpaid contributions for both periods.  56.1 Stmt. ¶ 19; Savci Decl. ¶ 21.

After ACE failed to remit the unpaid amount, the Funds initiated arbitration pursuant to the 2007 Agreement.  56.1 Stmt. ¶ 16; Savci Decl. ¶¶ 19-20.  After providing notice to both parties, the Arbitrator, Joseph A. Harris, held a hearing on January 7, 2019.  56.1 Stmt. ¶ 17; Savci Decl. ¶¶ 19-20; Savci Decl. Ex. 6 ("Notice of Hearing").  At the hearing, Petitioners appeared through counsel and submitted testimony and other evidence in support of their claims.  56.1 Stmt. ¶ 18; Savci Decl. Ex 1 ("Award") at 2.  No representative appeared at the hearing on behalf of ACE.  Award at 2; 56.1 Stmt. ¶ 17.  Because Petitioners provided proof that ACE had legally sufficient notice of the hearing and the claims against it, the Arbitrator held ACE in default and proceeded in its absence.  Award at 2.

On January 24, the Arbitrator issued his award, finding that ACE was bound to the 2007 Agreement with the Union at all relevant times and was thus obligated to make payments to the Funds in accordance with its terms.  *Id.* at 1.  The Arbitrator determined that, based on "substantial and credible evidence," ACE had violated the terms of the 2007 Agreement and owed the Funds

3

$64,655.75 in estimated unpaid fringe benefits; $13,343.69 in dues and PAC contributions; $2,817.75 in current interest; $1,233.44 in past due interest; $5,635.50 in liquidated damages; $8,041.16 in imputed audit costs; $500 in attorneys' fees; and $1,650 for the Arbitrator's fee, for a total award of $97,877.29.  *Id.* at 3.  The Funds have since received $30,857.89 in payments against the Award leaving a balance of $67,019.40.  Savci Decl. ¶ 2; 56.1 Stmt. ¶ 20.

On January 23, 2020, Petitioners commenced this confirmation action, asserting that ACE had not satisfied a portion of the arbitral award.  Petition, Dkt No. 1.  The Court directed Petitioners to file any declarations and affidavits with which it intended to support its petition by February 10, 2020 and directed ACE to file any opposition by March 2, 2020.  Dkt No. 6.  Petitioners filed their motion for summary judgment and supporting documents on February 14, 2020.  Dkt Nos. 10–13.  ACE failed to file an opposition, even after the Court granted an extension of its deadline to respond to March 9, 2020.  Dkt No. 8.

Petitioners served their petition and summons on ACE on February 7, 2020.  Dkt No. 9.  Despite being properly served with the petition and summons and the Court's orders establishing and extending deadlines for opposing that motion, ACE has not appeared in this action.

## II.    DISCUSSION

"Section 301 of the [LMRA], 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards."  *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998).  "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court."  *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-04421, 2012 WL 2179118 (ENV) (RLM), at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

The Court's review of a final arbitration award under the LMRA is "very limited."  *Nat'l*

4

*Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).  Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.*  It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537.  Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) ("Because the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of arbitration awards, an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." (internal citations and alterations omitted)); *Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)).  "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006).  Thus, like unopposed summary judgment motions, unopposed confirmation petitions "must fail where the undisputed facts fail to show that

the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

Here, there is no indication that the Arbitrator's award was procured through fraud or dishonesty or that the Arbitrator was acting in disregard of the Agreement or outside the scope of his broad authority to resolve any dispute between the parties regarding contributions. Rather, the record indicates that the Arbitrator based his award on undisputed evidence that the Funds conducted an audit in accordance with the terms of the 2007 Agreement and that ACE failed to remit payments to the Funds for work it had completed, as required by the contract terms. The record further indicates that the Arbitrator based the amount of his award of principal, interest, liquidated damages, and various costs on the contract provisions and undisputed testimony. Award at 2–3; *see Gottdiener*, 462 F.3d at 110 (noting that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" and that "[o]nly a barely colorable justification for the outcome reached by the arbitrator[ ] is necessary to confirm the award" (internal citations and quotations omitted)). Accordingly, Petitioners' motion is granted and the award is confirmed.

### III.     CONCLUSION

For the foregoing reasons, the Clerk of Court is directed to enter judgment in favor of Petitioner and against Respondents in the amount of $67,019.40—which consists of the arbitration award of $97,877.29 minus $30,857.89 which the Funds have since received from ACE.

The Clerk of Court is further directed to terminate all pending motions, adjourn all deadlines, and to close this case.

Petitioners are directed to serve a copy of this order on Respondents and retain proof of service.

SO ORDERED.

Dated: April 30, 2020

_____
GREGORY H. WOODS
United States District Judge